## A09A1798. BECOATS v. THE STATE.
### (688 SE2d 686)

PHIPPS, Judge.

Following a bench trial, Phyllip Jerrod Becoats was convicted of trafficking in cocaine, possessing marijuana and failing to maintain his lane. Becoats claims that the trial court erred by denying his motion to suppress evidence obtained from a vehicle search during a traffic stop. Because the trial court did not err in denying the motion, we affirm.

> While the trial court's findings as to disputed facts in a ruling on a motion to suppress will be reviewed to determine whether the ruling was clearly erroneous, where the evidence is uncontroverted and no question regarding the credibility of witnesses is presented, the trial court's application of the law to undisputed facts is subject to de novo appellate review.[1]

At the motion to suppress hearing, a city police officer testified that he observed Becoats's vehicle straddling the center turn lane and saw Becoats looking over his shoulder and watching him as he

---

[1] *Vansant v. State*, 264 Ga. 319, 320 (1) (443 SE2d 474) (1994) (citations omitted).

drove past. The officer then saw Becoats accelerate rapidly, turn abruptly into a shopping center parking lot and stop. As the officer moved closer, Becoats exited his vehicle and went into a liquor store, returning with what appeared to be a 12-pack of beer. Several minutes later, the officer left the parking lot, heading south. But when he saw Becoats's vehicle leave the lot, heading north, he followed him. After observing Becoats's vehicle weaving within the lane and crossing over the yellow center lane marker, the officer activated his blue lights and stopped the vehicle.

When he approached Becoats, the officer observed that Becoats was very nervous. The officer inquired whether Becoats was under the influence of any medication, alcohol or drugs and whether he had any illegal weapons, large sums of money or drugs in the vehicle. Becoats answered "no" to all questions. While Becoats was retrieving his driver's license, the officer asked for permission to search the car. Becoats said the officer could, but that he was in a hurry. The officer considered Becoats's response to be a refusal.

While the officer was checking Becoats's license on the mobile computer inside his patrol car, a city police sergeant arrived with his drug dog. The sergeant testified that he heard about the traffic stop on the police radio and proceeded in that direction as a backup officer. At the officer's request, the sergeant had his drug dog scan the exterior of Becoats's vehicle for any narcotics odor. The dog gave an odor response, barking and lunging at the vehicle. Based on the dog's response, the sergeant searched the car, where he found marijuana and crack cocaine in the center console and in a closed box in the passenger seat. After the search was completed and Becoats was arrested, Becoats informed the officer that he had a bag of cocaine in his pants.

At the bench trial, counsel for both parties stipulated to the facts introduced at the motion to suppress hearing and to drug identification reports showing that the drugs found in Becoats's vehicle included a substance weighing over fifty-five grams that tested positive for cocaine, with a purity of over sixty percent, and three bags of a substance that tested positive for marijuana. Based on the stipulated evidence and its prior ruling on the motion to suppress, the trial court found Becoats guilty of all charges.

Becoats argues that his motion to suppress should have been granted because the search was conducted after the traffic stop had concluded and without reasonable suspicion of criminal activity, thereby violating his Fourth Amendment rights. Becoats does not challenge the stop itself, which was based on the officer's observation that Becoats's vehicle was weaving, but argues that the officer detained him after the traffic stop had concluded, thus exceeding the scope of a permissible investigation of a traffic offense.

An officer who lacks reasonable suspicion of other criminal activity exceeds the scope of a permissible investigation of a traffic offense only if he continues to detain and interrogate the subject, or seeks consent to search, after the conclusion of the traffic stop or after the tasks related to the investigation of the traffic violation have been accomplished.[2]

Becoats correctly points out that nervousness alone cannot provide reasonable suspicion of criminal activity.[3] But the evidence showed that he was not detained after the conclusion of the traffic stop.

Approximately four minutes after the officer stopped Becoats, he went back to his car to check Becoats's driver's license.

It does not unreasonably expand the scope or duration of a valid traffic stop for an officer to prolong the stop to immediately investigate and determine if the driver is entitled to continue to operate the vehicle by checking the status of the driver's license, insurance, and vehicle registration.[4]

Approximately one minute after the officer went to conduct the license check, the drug dog arrived and began its open-air search around Becoats's vehicle. Even though Becoats refused to consent to a search of his car, because he was validly detained for less than ten minutes while the officer was checking his license, the sergeant "was free to have the handler walk the dog around the car, as use of a trained drug detection dog, in a location where he is entitled to be, to sniff the exterior of a container, is not an unreasonable search."[5] And because a drug dog's sniffing of the exterior of a car does not constitute a search under the Fourth Amendment, a police officer does not need reasonable and articulable suspicion before using a canine trained in drug detection to sniff a vehicle's exterior.[6] Once the drug dog alerted on the exterior of Becoats's vehicle, the officer had probable cause to believe that contraband was contained therein

---

[2] *St. Fleur v. State*, 296 Ga. App. 849, 851 (1) (676 SE2d 243) (2009) (citation and emphasis omitted).

[3] *Gonzales v. State*, 255 Ga. App. 149, 150 (564 SE2d 552) (2002).

[4] *Wilson v. State*, 293 Ga. App. 136, 138 (666 SE2d 573) (2008) (citation and punctuation omitted).

[5] *Thomas v. State*, 289 Ga. App. 161, 162-163 (657 SE2d 247) (2008); see *Rogers v. State*, 253 Ga. App. 863, 864 (1) (560 SE2d 742) (2002).

[6] *Thomas*, supra at 163.

and the authority to search its contents.[7] The trial court did not err in denying the motion to suppress.[8]

Becoats argues that *Migliore v. State of Ga.*[9] is factually similar and should control here. In *Migliore*, however, the officer had completed his investigation of the traffic offense before deciding to have his drug dog walk around the defendant's car.[10] Because the open-air sniff in this case occurred within five minutes of the initial stop, during the license check, it did not unreasonably prolong the initial detention.[11]

*Judgment affirmed. Smith, P. J., and Bernes, J., concur.*

DECIDED DECEMBER 21, 2009 — 

*Frederick M. Scherma*, for appellant.
*Patrick H. Head, District Attorney, Amelia G. Pray, Assistant District Attorney*, for appellee.

---

[7] *Rogers*, supra at 865.
[8] See *Thomas*, supra; *Rogers*, supra.
[9] 240 Ga. App. 783 (525 SE2d 166) (1999).
[10] Id.
[11] See *St. Fleur*, supra at 852.